UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANGELO BOWMAN,

Plaintiff,

v.

Case No. 21-cv-12845
Honorable Linda V. Parker

TERRY VANKEUREN, JR.
and NOAH PILLSBURY,

Defendants.
________________________________/

**OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS (ECF NO. 108)**

This matter, brought pursuant to 42 U.S.C. § 1983, is presently before the Court on Plaintiff Deangelo Bowman's motion for an award of attorney's fees and costs. Mr. Bowman filed his motion pursuant to 42 U.S.C. § 1988, following a jury verdict on December 15, 2025, finding Defendants Terry VanKeuren, Jr. and Noah Pillsbury (collectively "Defendants") liable for violating Mr. Bowman's Fourth Amendment rights. (ECF No. 108.) The jury awarded compensatory damages of $325,000 in favor of Mr. Bowman and against Defendants. ECF No. 103.) The jury found that Mr. Bowman was not entitled to punitive damages. (*Id.*) Mr. Bowman had also named the City of Flint as a Defendant in this action;

however, the Court granted the City's summary judgment motion on March 18, 2025. (ECF No. 66.)

In his motion, Mr. Bowman seeks $598,400.00 in attorneys' fees, $48,720.00 in paralegal fees, $69,822.18 in non-taxable costs not included in the taxed costs previously awarded by the Clerk of the Court, and $46,358.00 in prejudgment interest. (*See* ECF No. 108 at PageID.1996-97.) The motion is fully briefed. (ECF Nos. 108, 110, 112.) In their response, Defendants do not contest Mr. Bowman's entitlement to an award of attorneys' fees and costs as the prevailing party; however, they challenge the amount of the award and urge the Court to not award prejudgment interest. For the reasons discussed below, the Court grants in part and denies in part Mr. Bowman's motion.

## I.. Legal Standard

In § 1988, Congress authorized courts, in their discretion, to award a "reasonable attorney's fee" to "the prevailing party" in a § 1983 action. 42 U.S.C. § 1988. As indicated, Defendants do not dispute that Mr. Bowman is a prevailing party with respect to his claims against them.

As reflected above, only "reasonable" attorney fees and costs are recoverable. "[A] reasonable attorney's fee award is one that is adequate to attract competent counsel but . . . [that does] not produce windfalls to attorneys." *Blum v. Stevenson*, 465 U.S. 886, 893, 897 (1984) (internal quotation marks and citation

omitted); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (cleaned up) (explaining that the goal of the fee-shifting statutes is "to induce a capable attorney to undertake the representation of a meritorious civil rights case" . . . "not to provide a form of economic relief to improve the financial lot of attorneys"); *Adcock-Ladd v. Sec'y of Treasury*, 277 F.3d 343, 349 (6th Cir. 2000). The starting point for calculating a reasonable fee award is assessing the "lodestar." *Adcock-Ladd*, 277 F.3d at 349 (quoting *Hensley v. v. Eckerhart*, 461 U.S. 424, 433 (1983)); *Smith v. Khouri*, 751 N.W.2d 472, 479-80 (Mich. 2008). "There is a 'strong presumption that the lodestar figure . . . represents a 'reasonable' fee." *Barrow v. City of Cleveland*, 773 F. App'x 254, 268 (6th Cir. 2019) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (*Delaware Valley I*)).

The lodestar is "the proven number of hours reasonably expended on the case by an attorney, multiplied by [the attorney's] court-ascertained reasonable hourly rate." *Id.* (quoting *Hensley*, 461 U.S. at 433). It is the movant's burden to establish entitlement to an award, *Fox v. Vice*, 563 U.S. 826, 838 (2011), including showing that the requested hourly rate(s) and hours billed are reasonable, *see Blum v. Stevenson*, 465 U.S. 886, 897 (1984); *see also Hensley*, 461 U.S. at 437. To that end, the party seeking an award must "submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. The Supreme Court has

instructed reviewing courts to exclude fees that were not "reasonably expended[.]" *Id.* at 434.

After calculating the lodestar, the court may adjust the fee award in light of relevant factors. *See Adcock-Ladd*, 227 F.3d at 349 (citing *Reed v. Rhodes*, 179 F.3d 453, 471-72 (6th Cir. 1999)). The Sixth Circuit has identified twelve:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 349 n.8 (quoting *Reed*, 179 F.3d at 471-72 n.3). However, these factors constituted a separate balancing test used by the courts to assess a reasonable attorney fee, "before the lodestar became 'the guiding light of [the Supreme Court's] fee shifting jurisprudence.'" *Murphy v. Smith*, 583 U.S. 220, 227 (2018) (quoting *Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

Since the adoption of the lodestar as the presumptively reasonable fee, *Delaware Valley I*, 478 U.S. at 565, the Supreme Court has warned lower courts not to place "undue reliance" on these factors, finding that most are already

subsumed in the lodestar calculation,[1] *see Perdue*, 559 U.S. at 553 (citing *Delaware Valley I*, 478 U.S. at 566); *see also id.* (citations omitted) (reiterating "that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation"). Nevertheless, the Supreme Court has indicated that "[t]he lodestar method was never intended to be conclusive in all circumstances." *Perdue*, 559 U.S. at 553. "[T]he strong presumption that the lodestar figure is reasonable . . . may be overcome in those rare circumstances in which [it] does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Id.* at 553-54.

Moreover, the presumption is dependent on counsel using "billing judgment." *Hensley*, 461 U.S. at 434. As the Supreme Court explained in *Hensley*: "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* "Hours that are not properly billed to

[1] For example, the novelty and complexity of a case "presumably are fully reflected in the number of billable hours recorded by counsel" and the hours determined to be "reasonable." *Perdue*, 559 U.S. at 553 (citation omitted). Similarly, the quality of an attorney's performance is part of fixing the attorney's reasonable hourly rate. *Id*.

one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id*. (quotation marks and citation omitted).

Notably, when assessing whether counsel has exercised billing judgment, district courts need not act as "green-eyeshade accountants" who attempt to "achieve auditing perfection." *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (quoting *Fox*, 563 U.S. at 838). Neither Supreme Court nor Sixth Circuit precedent require courts "to cull through the records and conduct a[] line-item review." *Id.* at 713 n.11. Rather, district courts "must simply . . . do 'rough justice.'" *Id.* at 703. (quoting *Fox*, 563 U.S. at 838). "This means that the court can rely on estimates based on its 'overall sense of a suit.'" *Id*. (quoting *Fox*, 563 U.S. at 838).

To that end, the Sixth Circuit "has recognized the propriety of an across the board reduction" where a sampling of the billing invoice reflects that a reduction is warranted, as opposed to line-by-line reductions. *Auto All. Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226, 228 (2005) (citing *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986)); *see also Hensley*, 461 U.S. at 436-37 (stating that trial courts "may simply reduce the award" instead of "attempt[ing] to identify specific hours that should be eliminated"). This method is particularly appropriate when fee documentation is voluminous. *Loranger v. Stierheim*, 10 F.3d 776, 783

(11th Cir. 1994) ( Where fee documentation is voluminous . . . an hour-by-hour review is simply impractical and a waste of judicial resources.”).

Attorney fee petitions should not “generate ‘satellite’ disputes over fees” or “prompt ‘a second major litigation[.]’” *McQueary v. Conway*, 614 F.2d 591, 598 (6th Cir. 2010) (first quoting *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992); then quoting *Hensley*, 461 U.S. at 437).

## II. Analysis – Attorney and Paralegal Fees

Mr. Bowman’s requested attorneys’ fees reflect the following hours and hourly rates invoiced by his counsel:

| Attorney | Hourly Rate | Hours | Lodestar Calculation |
|---|---|---|---|
| Christopher Trainor | $1,200.00 | 268.25 | $321,900.00 |
| Amy DeRouin | $750.00 | 101 | $75,750.00 |
| Jonathan Abent | $600.00 | 295.25 | $177,150.00 |
| Sharbel Massoud | $300.00 | 77 | $23,100.00 |

Mr. Bowman also requests fees for 243.60 hours billed by 5 paralegals at an hourly rate of $200, for a total paralegal fee of $48,720.00.

### A. Reasonable Hourly Rate - Attorneys

Mr. Bowman asserts that the hourly rates requested are reasonable when compared to the billing rates in the State Bar of Michigan’s 2023 Economics of Law Report, which includes survey data for the income and billing rates of practicing attorneys throughout the State (hereafter “Michigan Bar Report”). (*See*

ECF No. 108-3.) Mr. Bowman identifies these specific rates as being relevant here:

| Category | Mean | 75 Percentile | 95th Percentile |
|---|---|---|---|
| Civil Rights | $381 | $450 | $710 |
| Personal Injury | $425 | $500 | $900 |
| Equity Partner/Shareholder (Mr. Trainor) | $413 | $500 | $730 |
| Senior Associate (Ms. DeRouin) | $316 | $367 | $485 |
| Associate (Mr. Abent & Mr. Massoud) | $291 | $335 | $500 |
| 1-2 years (Mr. Massoud) | $251 | $300 | $350 |
| 11-15 years (Mr. Abent) | $330 | $395 | $575 |
| 16-25 years (Ms. DeRouin) | $337 | $425 | $600 |
| 35+ years (Mr. Trainor) | $339 | $400 | $650 |
| Firm size (7-10 attorneys) | $359 | $405 | $600 |
| Downtown Detroit (site of trial) | $454 | $593 | $760 |
| Oakland County (firm location) | $356 | $425 | $637 |
| Wayne County (site of trial) | $357 | $425 | $650 |

(ECF No. 108 at PageID.1991-92; *see also* ECF No. 108-3 at PageID.2025-30.)

Mr. Trainor has been licensed to practice law in Michigan since 1989. He is the Principal and Owner of Christopher Trainor & Associates, which is in White Lake, Michigan. Mr. Trainor has focused his thirty-five plus years of practice

primarily on personal injury matters, particularly civil rights cases. Ms. DeRouin has been licensed to practice law in Michigan since 2007, and she has worked at Christopher Trainor & Associates since that time. She is a Managing Attorney.

Mr. Abent graduated law school in 2011, and he has been licensed to practice in Michigan since 2014. Mr. Abent has been employed as an Associate and Appellate Attorney at Mr. Trainor's firm since 2021. Mr. Massoud graduated law school in 2021, and has been licensed to practice in Michigan since 2025. He began working for Mr. Trainor in 2022, first as a paralegal/legal assistant and then as an Associate Attorney.

Defendants take issue with the hourly rates Mr. Bowman seeks for his counsel, pointing out that they are double and triple the relevant prevailing mean market rates in the Michigan Bar Report. They point out that Mr. Massoud passed the bar less than a month before the trial in this matter. Defendants suggest an hourly rate of $250 for Mr. Abent and Ms. DeRouin, an hourly rate of $150 for Mr. Massoud; and an hourly rate of $500 for Mr. Trainor. They note that the latter is almost double the mean hour rate.

In their briefs, the parties cite prior cases they believe support their contention that the hourly rates here are reasonable (Mr. Bowman) or unreasonable (Defendants). In his affidavit, Mr. Trainor claims that his requested fees were approved in *Van Buren v. Klepald*, No. 13-cv-14565 (E.D. Mich.), and *King v.*

*Jackson Cnty.*, No. 17-cv-12342 (E.D. Mich.). (*See* ECF No. 108-2 at PageID.2018 ¶ 8.) Mr. Trainor neglects to mention, however, that the fees in both of those cases were not awarded by the court but were reached pursuant to a settlement agreement. *See* Stip. Order Granting Pl.'s Mot. to Approve Settlement, *Klepald*, Case No. 13-cv-14565 (E.D. Mich. Jan. 12, 2018), ECF No. 165; Order Granting Mot. to Approve Settlement & Distribution of Settlement Proceeds, *King*, No. 17-cv-12342 (E.D. Mich. Nov. 7, 2019), ECF No. 55. Mr. Bowman further cites in his reply brief *Seales v. Zberkot*, No. 12-11679, 2019 WL 3309070 (E.D. Mich. Apr. 19, 2019), *rev'd sub nom. Seales v. City of Detroit*, 959 F.3d 235 (6th Cir. 2020), arguing that attorneys with less experience than his counsel were awarded $600 (for lead counsel) and $250-300 per hour (for associate counsel).[2] But this case does nothing to further Mr. Bowman's requested hourly rates for his counsel--$1,200 for lead counsel and hourly rates from $300-750 for associate counsel, including an attorney who passed the bar less than a month at trial.

The case Defendants cite, *Watkins v. Genesee County*, No. 13-13678, 2017 WL 1077068 (E.D. Mich. Mar. 22, 2017), is unhelpful as well. In *Watkins*, the district court awarded attorneys' fees to the plaintiff's counsel, attorneys at

---

[2] Judge Drain's decision in *Seales* was reversed on appeal, as the Sixth Circuit concluded that judgment as a matter of law should have been granted to the defendant. *See Seales*, 959 F.3d 235. The Sixth Circuit had no reason, therefore, to review the district court's attorneys' fee award.

Christopher Trainor & Associates, ranging from $250 for lead counsel with comparable experience to Mr. Trainor to $250 to $180 for associate counsel (with Ms. DeRouin being one of those attorneys paid at the higher end). As Mr. Bowman points out, however, the trial in *Watkins* was ten years ago. Further, the plaintiff prevailed at trial as to only three of the four individual defendants, he was awarded only $1.00 in compensatory damages as to the individual defendant found to have violated his civil rights, and $10,000 on his claim against the county. *Id.*

What the Court finds more convincing is Defendants' arguments based on the Michigan Bar Report's survey data. District courts frequently look to the survey data to determine reasonable hourly rates, and they utilize the relevant average billing rates. *See, e.g., Clements v. Prudential Protective Servs., LLC*, 100 F. Supp. 3d 604, 617 (E.D. Mich. 2015) (citing cases). The Sixth Circuit has approved this practice. *Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 F. App'x 498, 500-02 (2006). The average rates, rather than a higher percentile, are more appropriately applied as the fee-shifting statutes "only guarantee[] [prevailing parties] competent counsel, not the best and/or most expensive counsel." *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 948 (E.D. Mich. 2005); *see also Coulter*, 805 F.2d at 148-49 ("Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate."); *Robinson*

*v. City of Edmond*, 160 F.3d 1275, 1288 (10th Cir. 1998) ("Fee-shifting statutes . . . do not permit an award of fees charged by 'the best attorneys that money can buy' if those rates exceed the prevailing market rate for similar services.").

The average hourly rate in 2023 for civil rights lawyers in Michigan was $381.[3] (ECF No. 108-3 at PageID.2027.) For downtown Detroit, where this case was tried, the mean is $454. (*Id.* at PageID.2026.) For lawyers licensed as long as Mr. Trainor, the mean hourly rate is $339. (*Id*. at PageID.2025.) As Defendants believe that an hourly rate of $500—which exceeds all of these figures—is reasonable based on Mr. Trainor's qualifications, the Court accepts the higher rate.

For lawyers with 19 years of experience, like Ms. DeRouin, the average hourly rate is $337. The Court finds this rate reasonable, even though the rates for civil rights lawyers and a downtown Detroit location are higher, when one compares Ms. DeRouin's experience and role in the litigation to Mr. Trainor's.

The mean hourly rate for attorneys with Mr. Abent's experience is $330. The Court finds that rate reasonable. The mean rate for attorneys one to two years in practice is $251; however, Mr. Massoud passed the bar only a month before trial. Moreover, and perhaps because of this, much of the work described in his

[3] The Court does not see this as a personal injury case as used in the survey. While Mr. Bowman suffered personal injuries, it resulted from the violation of his civil rights.

billing invoices are activities performed typically by a paralegal or other non-lawyers (an issue discussed more fully below). The Court finds an hourly rate of $125 to be reasonable for Mr. Massoud.

The Court will recalculate the lodestar figure using these reasonable hourly rates.

**B. Reasonable Hourly Rate – Paralegals**

Mr. Bowman's requested attorneys' fees reflect the following hours and billings rates for the five current or previous paralegals at Christopher Trainor & Associates who worked on this matter:

| Paralegal | Hourly Rate | Hours | Lodestar Calculation |
|---|---|---|---|
| Shanna Suver | $200 | 148.25 | $29,650.00 |
| Jessup Moreland | $200 | 17.1 | $3,420.00 |
| Christian Clark | $200 | 21.5 | $4,300.00 |
| Mya Nummer | $200 | 5.25 | $1,050.00 |
| Kacy Grzena | $200 | 13.5 | $2,700.00 |
| Former paralegals | $200 | 38 | $7,600.00 |

Mr. Bowman asserts that an hourly rate of $200 is reasonable, considering that judges in this District, in cases he cites, awarded $115.00 to $125.00 per hour for paralegal fees in 2014. (ECF No. 108 at PageID.2000-01.) He cites cases from outside this District, as well, where judges found an hourly paralegal rate of $200 reasonable.

This Court finds $200 to be high, considering the average rate for licensed attorneys in the State, the lack of specific information regarding the experience of

the paralegals except for Ms. Suver, and its review of recent fee awards in this District. From this Court's review of several recent decisions, judges in this District frequently approve paralegal hourly rates between $125-175.00. *See, e.g., Brock v. Clary*, No. 22-10500, 2025 WL 2556249, at *3 (E.D. Mich. Sept. 5, 2025) (finding paralegal rate of $125.00 in a civil rights lawsuit); *Yeremian v. MGM Grand Casino*, No.22-cv-12978, 2025 WL 1749974 at *14 (E.D. Mich. June 25, 2025) (collecting cases supporting $100 hourly rate for paralegal and law clerk work in employment discrimination lawsuit); *see also Mannion v. Henry Elec., LLC*, No. 25-11344, 2026 WL 243929, at *11 (E.D. Mich. Jan. 29, 2026) (finding paralegal hourly rate of $125 reasonable); *Latifa & Halal Kitchen, LLC v. Harouf Corp.*, No. 2-23-cv-12779, 2025 WL 1106061, at *2 (E.D. Mich. Apr. 14, 2025) ("Courts find that paralegal rates around $100 per hour are reasonable." (citing cases)). The Court finds an hourly rate of $125.00 to be reasonable.

### C. Reasonable Hours

Defendants raise several objections to the hours billed by Mr. Bowman's attorneys and paralegals. The Court takes each in turn.

#### 1. Billing Increments

As an overall matter, Defendants take issue with counsel's billing at nothing less than quarter (.25) hour increments. Defendants argue that many tasks (e.g., phones calls and emails) take less time than that.

Courts have declined to find the practice of billing in quarter-hour increments per se unreasonable. *See, e.g. Bench Billboard Co. v. City of Toledo*, 759 F. Supp. 2d 905, 914 (N.D. Ohio 2010) (citing *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 455 (1st Cir. 2009); *Fox v. Vice*, 737 F. Supp. 2d 607, 609 (W.D. La. 2010); *Winterstein v. Stryker Corp. Grp. Life Ins. Plan*, No. C 02-05746, 2006 WL 1071884, at *2 (N.D. Cal. Apr. 24, 2006)). Nevertheless, district courts often impose across-the-board reductions in the hours billed in this manner, reasoning that it is "suspect" and "fee enhancing." *See Bench Billboard*, 759 F. Supp. 2d at 914 (citing cases and imposing a 7.5% reduction for billing in quarter-hour increments); *see also Yellow Book USA, Inc. v. Brandeberry*, No. 3:10-cv-025, 2013 WL 2319142, at *8 (S.D. Ohio May 28, 2013) (imposing a 5% reduction where 112 of the 272 distinct entries included telephone conferences, and at least ten entailed charging the regular hourly rate for travel); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (affirming the district court's 20% across-the-board reduction for quarter-hour billing); *Diffenderfer*, 587 F.3d at 455 (upholding the district court's 20% reduction due to quarter-hour increments). In many of those cases, the courts found a reduction warranted because the billing records were replete with quarter-and half-hour charges for tasks that likely took a fraction of the time (e.g., drafting letters and emails, telephone calls, and intra-office conferences). *Bench Billboard*, 759 F. Supp. 2d at 914; *Welch*, 480 F.3d at

949 (affirming the district court's across-the board reduction for quarter-hour billing where the court found the hours "inflated because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time"); *Diffenderfer v. Gomez-Colon*, 606 F. Supp. 2d 222, 229 (D.P.R.), aff'd 587 F.3d 445 (1st Cir. 2009) (imposing a reduction where counsel billed by the quarter hour for reading each docket entry and "at least fifty similarly menial items"). As district courts have observed, "very few telephone calls last more than one-tenth of an hour and . . . it rarely takes more than one-tenth of an hour to read an incoming letter or write a short outgoing letter." *Potter v. Blue Cross Blue Shield of Mich.*, 10 F. Supp. 3d 737, 765 (E.D. Mich. 2014) (quoting *Yellow Book USA, Inc. v Brandeberry*, No. 3:10-cv-025, 2013 WL 2319142, at *8 (S.D. Ohio May 28, 2013) (quoting *In re Tom Carter Enters.*, 55 B.R. 548, 549 (Bankr. C.D. Cal. 1985)).

Those courts concluding that quarter-hour billing is unreasonable often apply an across-the-board reduction, finding it "a practical impossibility" to adjust improper billing entries to reflect more accurate time increments. *Bench Billboard*, 759 F. Supp. 2d at 914. The Sixth Circuit has approved such across-the-board reductions. *See, e.g.*, *Bench Billboard v. City of Toledo*, 499 F. App'x 538, 549 (2012). Nevertheless, it also has warned that "[q]uarter-hour billing cannot mathematically warrant a fee reduction greater than 60% relative to tenth-of-an-

hour billing, and in most cases district courts should apply much lower percentage reductions" because "the purpose is to counter over-billing, not punish the failure to use tenth-of-an hour billing." *Yellowbook, Inc. v. Brandenberry*, 708 F.3d 837, 849 (2013) (footnote omitted).

As the Sixth Circuit went on to explain:

> A task of 6 minutes or fewer would result in billing 60% less under a tenth-of-an-hour system than under a quarter-hour system. An hour and one minute task, however, would only warrant a fee reduction of 12%, and lengthy or whole-hour tasks warrant little or no reduction.

*Id.* at 837 n.3. Here, Mr. Abent's and Mr. Massoud's billing invoices are replete with quarter-hour charges for tasks likely to have taken a fraction of that time. (*See* ECF Nos. 108-7, 108-8.) The Court finds a 20% across-the-board reduction of their hours warranted.

The paralegals who worked on Mr. Bowman's case also used quarter-hour billing and consistently billed for work on shorter tasks. The Court finds a 20% across-the-board reduction warranted here, as well.

In comparison, Mr. Trainor' and Ms. DeRouin's billings are primarily comprised of whole-hour or multi-hour tasks. (*See* ECF Nos. 108-5, 108-6.) In fact, the invoices include very few entries for anything except a whole hour. The entries seems to have been rounded to the whole full hour, as it would be surprising that almost every task they engaged in occupied exactly a full hour. Some entries even reflect a single time entry for a broad category of work over

multiple days. This suggests to the Court either over-billing by billing in hour increments or a failure to keep contemporaneous time records.

Either warrants a reduction. *See Hensley*, 461 U.S. at 438 n.13 (affirming a 30% reduction for lack of contemporaneous records); *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1292-93 (M.D. Fla. 2000) (collecting cases imposing reductions for rounding off time entries and finding a 30% across-the-board reduction warranted where the majority of counsel's entries were in half-hour increments, which the court found "entirely unacceptable" and "results in a substantial windfall to Plaintiff's counsel"); *CityPlace Retail, LLC v. Wells Fargo Bank, N.A.*, No. 18-cv-81689, 2021 WL 3361172, at * (S.D. Fla. Jan. 12, 2021) (applying a 20% reduction where "a large majority of entries" were billed by the whole or half hour); *Wright v. Sumter Cnty. Bd. of Elections & Registration*, No. 1:14-cv-42, 2020 WL 11772602, at *6 (MD. Ga. Dec. 7, 2020), *vacated on other grounds* 2021 WL 5025095 (M.D. Ga. Jan. 5, 2021) (applying a 25% reduction where attorney's time was recorded almost entirely in whole-hour intervals); *Cox v. Mass. Dep't of Corr.*, No. 13-10379, 2019 WL 2075599, at *5 (D. Mass. May 10, 2019) (applying a 5-10% reduction in part due to whole-hour billing practices). The Court finds a 25% reduction appropriate.

**2. Work Inaccurately Billed as Attorney or Paralegal Work**

Defendants contend that the billing entries for Mr. Bowman's attorneys (specifically Mr. Abent and Mr. Massoud) and the paralegals who worked on his case include many hours billed for work that a client would not ordinarily pay at an attorney rate or paralegal rate. In other words, the attorneys' hours include tasks a paralegal or secretary or other office staff would usually perform. The paralegals' hours include non-compensable duties of secretarial or other office staff tasks. Examples of such tasks include copying, organizing files, scheduling, opening mail, calendaring, paying bills, and creating documents from a form.

In their duty to make a good-faith effort to "exclude from [their] fee request hours that are excessive, redundant, or otherwise unnecessary," *The NE Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016) (quoting *Hensley*, 461 U.S. at 434), attorneys should confirm that the work performed is billed at an appropriate rate. When an attorney bills for tasks usually performed by a paralegal or other office staff or a paralegals bill for tasks usually performed by office staff, the rate charged should be based on the nature of the work, not who billed for it. As courts have explained, "purely clerical or secretarial tasks should not be billed (even at a paralegal rate), because '[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.'" *Gibson v. Scott*, No. 2:12-cv-1128, 2014 WL 661716, at *4 (S.D.

Ohio Feb. 19, 2024) (quoting *Hensley*, 461 U.S. at 437)). "A purely clerical or secretarial activity is not billable at a paralegal's rate, or at any rate at all, because such tasks are included in office overhead." *Wesley v. Rigney*, No. CV 10-51, 2016 WL 6787235, at *4 (E.D. Ky. May 18, 2016) (citation and internal quotation marks omitted). As the Sixth Circuit recently restated, "purely clerical or secretarial tasks . . . should not be billed at a paralegal rate." *McPherson v. Suburban Ann Arbor, LLC*, 135 F.4th 419, 426 (2025) (quoting *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989)).

"Clerical work involves tasks that do not require legal knowledge, such as filing motions, preparing or reviewing summons, and receiving and filing correspondence." *Wesley*, 2016 WL 6787235, at *4; *B&G Mining, Inc. v. Office of Workers' Comp. Programs*, 522 F.3d 657, 666 (6th Cir. 2008) (citation omitted) (noting that "receiving and filing correspondence presumably constitutes clerical work"); *Drumm v. Belle Fountain Nursing & Rehab. Ctr., Inc.*, No. 23-10987, 2026 WL 867497, at *6 (E.D. Mich. Mar. 30, 2026) (reducing hours that seemed to describe clerical tasks such as indexing, filing, sending documents, and scheduling or confirming dates).

The Court finds that the billing entries for Mr. Abent, to some degree (ECF No. 108-7), and for Mr. Massoud, significantly (ECF No. 108-8), include entries for assembling exhibits, scheduling, and travel related to collecting exhibits. For

example, Mr. Abent's entries include obtaining a transcript of an interview, updating potential criminal trial dates, assembling records to provide to Mr. Bowman's criminal defense attorney, obtaining an expert report, preparing documents and records and sending them to expert, assemble and send exhibits and disclosures; emailing the parties' proposed final pretrial order to chambers; obtaining booking photos from jail; and preparing exhibits for trial. The vagueness of some entries relating to correspondences make it impossible to discern whether attorney work was being performed. The Court is reducing Mr. Abent's billed hours by an additional 5% to account for this issue.

Almost all of Mr. Massoud's entries reflect work of a paralegal or office staff.[4] However, the reasonable hourly rate set by the Court for Mr. Massoud is already commensurate to that of the hourly rate for the paralegals working on Mr. Bowman's case. Therefore, the Court is simply deducting the 4.25 hours in Mr. Massoud's invoices that are associated with clerical or staff.

Most of the entries in the paralegal invoices reflect non-paralegal work (e.g., saving, copying, or uploading documents, updating the calendar, scheduling,

[4] Most telling, in Mr. Abent's invoice, on November 25, 2025, he billed, in part, to "send [a] *runner*" to obtain video evidence from defense counsel. (*See* ECF No. 108-7 at PageID.2068 (emphasis added).) Apparently, Mr. Massoud was that runner, as he billed for travel and the task of meeting with defense counsel on the same date regarding exhibits and evidence. (*See* ECF No. 108-8 at PageID.2072.)

mailing). The Court finds an additional 20% reduction in those hours appropriate to account for this.

### 3. Excessive Time and Redundancies

Defendants challenge as excessive and/or redundant the number of hours Mr. Bowman's counsel billed for certain specific activities. First, Defendants point to the hours Mr. Trainor billed in connection with the twelve witness depositions taken in this matter. Defendants complain that Mr. Trainor used block billing to report work preparing for multiple depositions and attending the depositions. Defendants complain that Mr. Trainor's billing practices make it impossible to segregate the time he spent preparing for, traveling to, and attending the depositions. Noting the time billed and the length of each deposition, Defendants surmise that Mr. Trainor failed to keep contemporaneous records and simply retroactively estimated the hours spent.[5]

While Mr. Trainor perhaps should have segregated the time spent preparing for, traveling to, and attending the depositions, and should not have lumped depositions together, this has not prevented the Court from evaluating the reasonableness of the time spent overall. Nor does the length of the depositions convince the Court that greater time spent in preparation was unreasonable, as it is not uncommon for the time spent preparing for a deposition to exceed the actual

[5] This concern has been addressed. *See supra*.

time spent in the deposition. *See Smith v. Lexisnexis Screening Sols., Inc.*, No. 13-cv-10774, 2015 WL 9459724, at *2 (E.D. Mich. Dec. 28, 2015). Moreover, it may have been Mr. Trainor's extensive preparation that enabled him to focus on what was most important to ask the deposition witnesses, enabling him to efficiently conduct his examination. Defendants' general assertion that Mr. Trainor, as an experienced lawyer, should have needed less time to prepare, does not provide the Court with any real substantive basis to question the reasonableness of the hours expended.

Defendants next claim excessive billing related to trial preparation time, again comparing the time billed to prepare and the actual time spent at trial on the task at hand. For example, Defendants point out that Ms. DeRouin billed 13 hours preparing Mr. Bowman for his trial testimony when he was on the stand for only 2 hours. All Defendants offer to demonstrate that the hours invoiced are unreasonable is the assertion in their brief that defense counsel "typically estimates one hour of preparation time for every hour of trial." (ECF No. 110 at PageID.2376.) But as Defendants then admit, "[s]ometimes it is more, sometimes it is less, but it's a good estimate." (*Id.*) The Court is not convinced that this is a case where more was unreasonable.

Defendants also take issue with the hours billed by four attorneys and a paralegal to travel to and attend the trial on Mr. Bowman's behalf. Defendants'

argument on this issue is extremely brief, and they offer no legal support to guide the Court's analysis. Again, they rely on defense counsel's typical experience preparing for trial, which does not convince the Court that the hours billed by Mr. Bowman's counsel are excessive or redundant.

Mr. Abent billed minimal hours (1-2) for each day of trial and identifies the discrete tasks he performed. The Court does not find it excessive or redundant for Mr. Trainor and Ms. DeRouin to both bill for their trial time. Mr. Abent's "trial" description makes it difficult to know how he assisted with the proceedings and why his participation, in addition to Mr. Trainor's and Ms. DeRouin's, was reasonable. However, as Defendants acknowledge, Mr. Abent appeared to provide IT services throughout the trial, entitling him to bill his time at least at a paralegal rate. As the hourly rate this Court has found reasonable for Mr. Abent is within that range, it finds no reason to adjust the hours he billed for the trial.

Ms. Clark billed 7 hours for "[a]ttending trial." This broad description makes it impossible for the Court to assess the reasonableness of the time billed. The Court is deducting those hours from her invoice.

#### 4. Other

Defendants make one last specific challenge to the hours billed by Mr. Bowman's attorneys. They point out that Mr. Abent's hours include almost 25 hours for work related to Mr. Bowman's response to the City of Flint's summary

judgment motion. The Court granted the motion, dismissed Mr. Bowman's claims against the City, and terminated it as a party to the action. The Court agrees that the fees related to the motion are not properly included in an award against Defendants. Those hours, which total 22.25, will be reduced from Mr. Abent's billings in the lodestar calculation.

## III. Prejudgment Interest

Plaintiff seeks prejudgment interest on the $325,000.00 jury award. (*See* ECF No. 183-1 at PageID. 9136-37.) "Ordinarily, a district court uses federal law to determine whether and in what amount to award prejudgment interest on a federal claim[.]" *Pianko v. General R.V. Ctr., Inc.*, No. 25-1659, 2026 WL 1961921, at *4 (6th Cir. July 7, 2026) (citing *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 333-34 (6th Cir. 2007)). Under federal law, prejudgment interest is awarded at the discretion of the trial court absent a contrary statutory provision. *EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 579 (6th Cir. 1984) (citing *Bricklayers Pension Tr. Fund v. Taiariol*, 671 F.2d 988 (6th Cir. 1982)).

Prejudgment interest is frequently awarded in the context of employment discrimination cases under the theory that it "is an element of [the plaintiff's] complete compensation." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989) (brackets in original) (quoting *West Virginia v. United States*, 479 U.S. 305,

310 (1985)); *see also In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 494-95 (6th Cir. 2013) (citing *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 842 (6th Cir. 1994)). In that context, the Sixth Circuit has stated that an award of prejudgment interest is appropriate if it "helps to make victims of discrimination whole and compensates them for the true cost of money damages they incurred." *Wilson Metal Casket Co.*, 24 F.3d at 842 (citing *West Virginia*, 479 U.S. at 310). "The purpose of awarding prejudgment interest under Title VII . . . is to compensate victims both for the time value of the lost money as well as for the effects of inflation." *United States v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998) (citation omitted). The same reasoning has supported prejudgment interest in other contexts. *See, e.g., West Virginia v. United States*, 479 U.S. 305, 310 (1987) (involving an action based on a contractual debt); *see also Gen. Motors v. Devex Corp.*, 461 U.S. 648, 654–55 (1983) (involving an action for patent infringement). Prejudgment interest should not be awarded if it will result in a windfall to the plaintiff, *In re ClassicStar Mare Lease Litig.*, 727 F.3d at 495 (citation omitted), or if the court "concludes that the plaintiff has been compensated fully for the injury he has suffered[,]" *Young v. Langley*, No. 87-1446, 1988 WL 12805, at *1 (6th Cir. Feb. 19, 1988).

In § 1983 cases, where the plaintiff suffered only non-economic damages, the plaintiff has not been deprived of money he or she would have otherwise had in

the absence of the defendant's unconstitutional conduct. The jury is presumed to have compensated the plaintiff fully for the injury suffered, and courts generally refrain from second-guessing the jury's award. For that reason, several courts have denied § 1983 plaintiffs prejudgment interest where the plaintiff suffered only non-economic damages. *See, e.g., Fjn LLC v. Parakh*, No. 09-14262, 2014 WL 7139859, at *7-8 (E.D. Mich. Dec. 12, 2014); *Tanner v. Borthwell*, No. 07-14579, 2013 WL 1148411, at *2 (E.D. Mich. Mar. 19, 2013); *Black-Hosang v. Mendenhall*, No. 2:01-cv-00623, 2006 WL 8424348, at *2 (S.D. Ohio Mar. 16, 2006); *see also Michella v. Brantley*, No. 2:24-cv-12680, 2025 WL 2965990, at *8-9 (E.D. Mich. Oct. 21, 2025) (awarding prejudgment interest on the plaintiff's lost overtime wages but not on his non-economic damages); *Cremeans v. Taczak*, No. 2:19-cv-02703, 2025 WL 2772454, at *21-25 (S.D. Ohio Sept. 26, 2025) (exercising discretion to deny prejudgment interest but applying factors in Ohio law to decide if prejudgment interest should be awarded); *but see Cole v. City of Memphis*, No. 2:13-cv-02117, 2015 WL 5076974, at *5 (W.D. Tenn. Aug. 27, 2025) (awarding prejudgment interest because the defendant did not raise an argument in opposition to it but failing to provide a reason for the award); *McCoy v. Alfrey*, No. 08-112, 2010 WL 4366120, at * (E.D. Ky. Oct. 28, 2010) (awarding prejudgment because plaintiffs were entitled to damages for their injuries for more than three years between the date of their injury and the date of judgment, and

"prejudgment interest compensates them for the lost use of the funds during this time").

Prejudgment interest is meant to compensate the plaintiff, not punish the defendant. *See Johns-Manville Corp. v. Guardian Indus. Corp.*, 718 F. Supp. 1310, 1316 (E.D. Mich. 1989); *see also Saint-Gobian Autover USA, Inc. V. Xinyi Glass N. Am., Inc.*, 707 F.Supp.2d 737 (N.D. Ohio 2010) ("Prejudgment interest has no punitive purpose."). The Court finds that the jury fully compensated Mr. Bowman for the violation of his constitutional rights in its verdict. Therefore, the Court denies Mr. Bowman's request for prejudgment interest.

**IV. Costs**

Following the jury's verdict, Mr. Bowman submitted a Bill of (taxed) Costs (ECF No. 106) and was awarded taxed costs of $3,241.55 (ECF No. 107). Those costs included the filing fee, fee for service, court reporter fees, and fees for the following witnesses' attendance at trial: Maria Reed, Courtney Banks, and Timothy Hilliker. (ECF No. 106). Mr. Bowman now seeks an award which includes non-taxable costs totaling $69,822.18. Mr. Bowman indicates that the costs already taxed by the Clerk of Court are not included in this request.

Defendants argue that the requested award is not reasonable, as it includes overhead costs not usually charged to clients (e.g., photocopying, legal research, a runner), witness fees already taxed, deposition transcripts already taxed, and expert

witness fees for which no explanation is provided to justify the fees and may have been included in the taxed costs.

The Sixth Circuit has advised that "[t]he award of statutory costs is a matter for the district court, in its best judgment as to what was reasonable and necessary . . .." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (quotation marks and citation omitted). District courts are permitted "to award those incidental and necessary expenses incurred in furnishing effective and competent representation as part of the award of attorney fees." *Id.* (cleaned up).

As the Sixth Circuit expressly provided in *Waldo*, "[r]ecoverable out-of-pocket expenses are those incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as reasonable photocopying, paralegal expenses, and travel and telephone costs." *Id*. (cleaned up). Entirely absent from Defendants' argument that these fees are not recoverable is a citation to supporting caselaw. The Court, therefore, declines Defendants' request to deduct such costs from Mr. Bowman's request.

Defendants other arguments concerning the requested costs do not convince the Court that they are unreasonable. They appear to be different than the costs already taxed. The Court is able to ascertain the hourly rates charged by Mr. Bowman's experts and finds them to be reasonable.

Thus, the Court awards Mr. Bowman costs totaling $69,822.18.

## IV. Conclusion and Order

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Mr. Bowman's petition for attorney's fees and costs. (ECF No. 108.) As summarized in the chart below, the Court: (a) reduces the requested hourly rates for the attorneys and paralegals who worked in this case on behalf of Mr. Bowman; (b) deducts some unreasonable hours; (c) applies across-the board reductions due to quarter-hour billing; and (d) applies across-the-board reductions where attorneys billed for paralegal and/or clerical work, and paralegals billed for clerical work. The resulting lodestar calculations are as follows:

| Attorney/ Paralegal | Adjusted Hourly Rate | Hours Billed | Deductions | Adjusted Hours | Lodestar Calculation |
|---|---|---|---|---|---|
| Christopher Trainor | $500.00 | 268.25 | •25% for half- to whole-hour billing | 201.19 | $100,595.00 |
| Amy DeRouin | $337.00 | 101 | •25% for half- to whole-hour billing | 75.75 | $25,527.75 |
| Jonathan Abent | $330.00 | 295.25 | •22.25 hrs.<br>•20% for quarter-hour billing<br>•5% for paralegal/clerical work | 204.75 | $67,567.50 |
| Sharbel Massoud | $125.00 | 77 | •4.25 hrs. clerical<br>•20% for quarter-hour billing | 58.20 | $7,275.00 |

| Attorney/ Paralegal | Adjusted Hourly Rate | Hours Billed | Deductions | Adjusted Hours | Lodestar Calculation |
|---|---|---|---|---|---|
| Shana Suver | $125 | 148.25 | •20% for quarter-hour billing<br>•20% for clerical work | 88.95 | $11,118.75 |
| Jessup Moreland | $125 | 17.10 | •20% for quarter-hour billing<br>•20% for clerical work | 10.26 | $1,282.50 |
| Christian Clark | $125 | 21.5 | •7 hrs. rel. trial<br>•20% for quarter-hour billing<br>•20% for clerical work | 8.7 | $1,087.50 |
| Mya Nummer | $125 | 5.25 | •20% for quarter-hour billing<br>•20% for clerical work | 3.15 | $393.75 |
| Kacy Grzena | $125 | 13.5 | •20% for quarter-hour billing<br>•20% for clerical work | 8.1 | $1,012.50 |
| Misc. Paralegals | $125 | 38 | •20% for quarter-hour billing<br>•20% for clerical work | 22.80 | $2,850.00 |

**TOTAL ATTORNEY/PARALEGAL FEES: $223,709.00**[6]

[6] Mr. Bowman requested an additional $5,000.00 in his opening brief for the "costs and fees associated with the preparation, filing, and arguing of [his fee petition."

The Court awards Mr. Bowman these fees, as well as his requested non-taxed costs of $69,822.18, and post-judgment interest. It denies his request for pre-judgment interest.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 20, 2026

---

(ECF No. 108.) As Defendants do not challenge that request, the Court adds those fees to the total.